

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2004

# Scottsdale Insurance v. Bieber Assoc Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2673

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Scottsdale Insurance v. Bieber Assoc Inc" (2004). *2004 Decisions.* Paper 514.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/514

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 03-2673

SCOTTSDALE INSURANCE CO.,

Appellant

v.

BIEBER & ASSOCIATES, INC.; RALPH SPARANEY, III

On Appeal from the United States District Court
for the Middle  District of Pennsylvania
(D.C. Civil No. 00-cv-01916)
District Judge: Hon. Malachy E. Mannion

Argued April 13, 2004

BEFORE: RENDELL, COWEN and LAY*, Circuit Judges

(Filed July 8, 2004)

Richard W. Yost, Esq. (Argued)
Yost & Tretta
1500 John F. Kennedy Boulevard
Two Penn Center Plaza, Suite 610
Philadelphia, PA 19102

Counsel for Appellant

---

*Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit,
sitting by designation.

Jeffrey M. Kornblau, Esq.
Gary Solomon, Esq. (Argued)
Kornblau & Kornblau
610 Harper Avenue
Jenkintown, PA 19102

Counsel for Appellee Ralph Sparaney, III

---

OPINION

---

COWEN, <u>Circuit Judge</u>.

Scottsdale Insurance Company ("Scottsdale") appeals an order granting summary judgment in favor of appellee Ralph Sparaney, III ("Sparaney") in the above-captioned declaratory action. The District Court granted summary judgment after determining that Scottsdale could not deny coverage to its insured based on a breach of an insurance policy's notice provision where it had notice of the initial claim, but may not have received notice of a subsequent suit filed in connection with that claim. The District Court had jurisdiction under 28 U.S.C. § 1332, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. Because we conclude that the District Court based its decision to grant summary judgment upon an erroneous interpretation of the insurance policy at issue, we will reverse and remand for further consideration of the parties' cross-motions for summary judgment.

I.

The factual background of the dispute is as follows. Scottsdale provided a comprehensive liability insurance policy to appellee Bieber & Associates, Inc. ("Bieber"), a small private security agency. On August 27, 1995, Sparaney was injured by an unknown assailant in Lackawanna County, Pennsylvania, at a concert for which Bieber was providing security. Approximately two years later, Sparaney sued Bieber, the County of Lackawanna, the concert promoter, and the ski resort at which the concert was held, claiming that his injuries resulted from allegedly inadequate security at the concert. Bieber failed to respond to the lawsuit, and Sparaney successfully obtained a default judgment against it. Scottsdale, acting on behalf of Bieber, attempted unsuccessfully to open the default judgment. Subsequently it filed the complaint in this action, seeking to be absolved from its responsibility to provide coverage to Bieber because of Bieber's alleged failure to provide it with timely notice of the state court action.[1]

Scottsdale had learned of the Sparaney claim in July 1996, when the concert promoter's insurer sent it a letter notifying it of Sparaney's alleged assault. Attached to the letter were a copy of a liability and damage evaluation submitted by Sparaney's attorney, a copy of the initial crime report describing the incident, and a demand for $175,000. Scottsdale entered into settlement discussions with Sparaney as early as November 1996; settlement talks continued through August 19, 1997. Notes maintained

---

[1] In addition to Bieber, Scottsdale also named as defendants in its complaint Sparaney (the party-in-interest), Lackawanna County, Metropolitan Entertainment, Inc. (the concert promoter), and Montage Ski Resort (the concert venue). The legal issues before us, however, only involve the relationship between Scottsdale and Bieber.

by Scottsdale establish that Scottsdale was aware by at least July 1997 that the statute of limitations on Sparaney's claim would run on August 27, 1997. Sparaney filed his writ of summons in state court on August 22, 1997, and the writ was served on Bieber on or about September 4, 1997. The actual complaint was served on Bieber on or about April 20, 1998.

Bieber did not respond to the lawsuit, and default judgment was entered in favor of Sparaney on October 13, 1998. It is undisputed that Bieber never forwarded the writ of summons, complaint, or notice of intent to take a default judgment directly to Scottsdale. George Bieber, testifying in deposition on behalf of his company, initially stated that he did not recall ever having seen any of these documents. In a subsequent affidavit, however, Bieber claimed to have placed the writ of summons in an envelope and sent it to the firm of Jordan & Company ("Jordan"). Jordan had been hired by Scottsdale to investigate the claim, interview Bieber, and observe Bieber's security operations. The parties dispute whether Jordan acted in any sort of agency capacity throughout the settlement negotiations as a liaison between Scottsdale and Bieber.

Also in dispute is whether Scottsdale received actual notice of the lawsuit from Sparaney. Jeffrey Kornblau, Sparaney's counsel, filed an affidavit stating that "[s]ometime after the service of the Summons upon Bieber & Associates, Inc., I [] contacted [Scottsdale claims representative] Coreen Bogden to advise of the filing of the Summons and to further discuss that they settle the claim or proceed with the litigation.

4

During our conversation, Ms. Bogden advised me that she was about to get married or that she had just gotten married and she would get to the file as soon as she could." App. at 444a.

After receiving the notice of default, Bieber contacted Scottsdale. In February 1999, Scottsdale retained counsel to defend Bieber under a reservation of rights. Scottsdale's attempts to open the default judgment were unsuccessful, and the judgment was affirmed on appeal to the Commonwealth Court on October 5, 2001. Scottsdale then filed this action, seeking a declaration of rights under the terms of Bieber's insurance policy. Scottsdale and Sparaney filed cross-motions for summary judgment, and the District Court granted summary judgment in favor of Sparaney.

II.

Our review of the District Court's order granting summary judgment is plenary. DeWitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997). Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998).

The applicable legal standard when an insurance company seeks to be released from its obligations because of untimely notice was established by the Pennsylvania

5

Supreme Court in <u>Brakeman v. Potomac Insurance Company</u>, 371 A.2d 193 (Pa. 1977); <u>see</u> <u>also</u> <u>Brooks v. American Centennial Insurance Company</u>, 327 F.3d 260, 264-65 (3d Cir. 2003) (discussing <u>Brakeman</u>).  In <u>Brakeman</u>, the Court squarely held that in such a situation, the insurance company must prove "that the notice provision was in fact breached and that the breach resulted in prejudice to its position." <u>Id.</u> at 198.  The District Court based its opinion on the first prong of <u>Brakeman</u>, finding that Bieber had not breached the notice provision as a matter of law.  Further, the court determined that the fact that Scottsdale was involved in investigating and attempting to settle the Sparaney claim prior to the suit demonstrated that Scottsdale was not prejudiced by Bieber's alleged failure to provide notice.

Construction of an insurance policy is a matter of law, so long as a court may fairly read it without ambiguity.  <u>See</u> <u>Trustees of the University of Pennsylvania v. Lexington Insurance Company</u>, 815 F.2d 890, 896 (3d Cir. 1987).  While ambiguities in the provisions of a policy must be construed against the insurer, <u>see</u> <u>McMillian v. State Mut. Life Assur. Co.</u>, 922 F.2d 1073, 1075 (3d Cir. 1990), "a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions." <u>Little v. MGIC Indem. Corp.</u>, 836 F.2d 789, 793 (3d Cir. 1987).  Section IV of the Commercial General Liability Coverage Form under which Bieber was insured by Scottsdale contains a subsection entitled "Duties In The Event Of Occurrence, Claim Or Suit":

      a.      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent

possible, notice should include:
(1)     How, when and where the "occurrence" or offense took place;
(2)     The names and addresses of any injured persons and witnesses; and
(3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.      If a claim is made or "suit" is brought against any insured, you must:
(1)     Immediately record the specifics of the claim or "suit" and the date received; and
(2)     Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.      You and any other involved insured must:
(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"
(2)     Authorize us to obtain records and other information; [and]
(3)     Cooperate with us in the investigation, settlement or defense of the claim or "suit."

App. at 92a-93a. In interpreting the policy, the District Court focused on subsection 'b' of the notice provision, finding that the policy did not require notice of a suit where notice of the initial claim had already been provided. Construing the disjunctive term in the reference to "claim or a 'suit'" against Scottsdale, the District Court determined that "[the] policy language specifically and unequivocally indicates that the duty to give notice was for an '. . . occurrence, (or a) claim, (or a) suit'. . . . [and does] not require that notice be given of an occurrence and later a claim and later a suit." App. at 24a.

We do not find that a plain reading of the policy terms yields such a result. The heading "Duties In The Event Of Occurrence, Claim Or Suit" establishes three distinct instances in which the insured must act. That the insured's responsibility extends to

7

related occurrences, claims, and suits is demonstrated by subsection 'a', which provides an independent notice requirement in the event of an "occurrence" and protects the insurer by allowing it to anticipate and investigate a potential claim or suit. If, for example, Bieber had become aware of the stabbing incident on the night of the concert and had informed Scottsdale immediately thereafter, it would have discharged its duty to provide notice under subsection 'a'. To say then that Bieber would have no further duty under subsection 'b' to provide notice to Scottsdale once it became aware of Sparaney's actual claim would be inconsistent with the plain language of the policy, which contains no language to indicate that compliance with subsection 'a' releases an insured from the duty to comply with subsection 'b'. Similarly, although the insured's duties to the insurer are the same whether a claim is brought or suit is filed, use of the disjunctive alone cannot fairly be read as a release from any future duty to provide notice of a lawsuit where notice of a claim has already been given.

This reading of the policy is bolstered by subsection 'c', which the District Court did not address in its ruling but which specifically and unequivocally imposes a duty on the insured to assist the insurer by "[i]mmediately send[ing] . . . copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'." Subsection 'c' would provide an independent ground for finding that Bieber was required to provide Scottsdale with notice of the lawsuit even were we to find an ambiguity as to whether notice of the claim relieves an insured of the duty to provide

notice of the suit. Read in the context of the entire notice provision, subsection 'c' demonstrates that the insured has a continuing duty to provide the insurer with legal papers it receives in connection with an ongoing claim.

We note that common sense supports such a reading. Insurers cannot be expected to station agents in the clerk's office of every court which may or may not have jurisdiction over a potential claim, waiting until the statutes of limitation for all possible causes of action have elapsed. Not every occurrence for which an insured faces potential liability will result in the filing of a claim, and not every unresolved claim will result in the filing of a lawsuit. Continuing notice requirements such as the one reflected in subsections 'a' and 'b' acknowledge the fact that, however involved the insurer becomes in defending a claim, the insured remains the party with primary access to the information necessary to do so at each of the three relevant stages. Because the insured is the party in the best position to know when legal action has been taken against it, notifying the insurer of such action is similar in importance to but functionally different from providing notice of an occurrence or claim. While the facts of this case indicate that Scottsdale was aware of Sparaney' intent to file a lawsuit, therefore, we hold that this knowledge does not release Bieber from its obligation under the policy to provide Scottsdale with notice once Sparaney had done so.

We further hold that the District Court erred in finding that Scottsdale was not prejudiced because of its "apparent willful failure to follow-up on its own activities,

9

discussions and documentation." Rather than focusing on Scottdale's activities before the suit was filed, the court should have determined whether Scottsdale had actual or constructive knowledge of the lawsuit after it had been filed, and whether, therefore, Scottsdale was actually prejudiced by any failure of Bieber to provide notice in accordance with the policy. Because there appear to be unresolved factual issues with regard to whether Jordan acted as an agent of Scottsdale and whether Sparaney's counsel informed Scottsdale of the lawsuit's filing, we leave the resolution of those matters (as well as the legal effect to be given to Bieber's contradictory sworn statements, if agency is in fact shown) to the District Court on remand.

III.

For the reasons discussed above, we will reverse the District Court's order granting Sparaney's cross-motion for summary judgment and remand for further consideration of the parties' cross-motions for summary judgment, to be undertaken in a manner consistent with this opinion.